United States Courts
Southern District of Texas
FILED

*September 11, 2025*

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

**HAOYING ZHANG,**
Plaintiff,

v.

**BITFEIFAN TECHNOLOGY CO., INC;
VIKESH N. PATEL, individually and in his official capacity as attorney of record;
KEARNEY, MCWILLIAMS & DAVIS, PLLC;
DOE DEFENDANTS 1–10,**
Defendants.

Civil Action No. **4:25cv4468**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
JURY TRIAL DEMANDED**

---

## NATURE OF THE ACTION

1. This is a civil action arising under 18 U.S.C. §§ 1961–1968; 42 U.S.C. §§ 1981, 1985(2), 1985(3); 42 U.S.C. § 1986; 18 U.S.C. §§ 1503, 1512, 1513; and 28 U.S.C. § 1927.

2. Plaintiff brings this action to redress employment discrimination and retaliation based on immigration status and political opinion, malicious litigation abuse, perjury, witness intimidation, and conspiracy to deprive Plaintiff of rights secured by the Constitution and laws of the United States, in violation of 18 U.S.C. §§ 1961–1968; 42 U.S.C. §§ 1981, 1985(2), 1985(3); 42 U.S.C. § 1986; 18 U.S.C. §§ 1503, 1512, 1513; and 28 U.S.C. § 1927. Plaintiff further alleges a pattern of international retaliation and misuse of the United States judicial system by a corporate enterprise whose leadership and funding originate from the People's Republic of China.

---

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), § 1332 (diversity jurisdiction as the parties are citizens of different states and the amount in controversy exceeds $75,000), § 1343 (civil rights), and § 1964(c) (RICO).

1

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the state of Texas where Defendants operate.

## PARTIES

5. Plaintiff HAOYING ZHANG, hereinafter referred to as 'Plaintiff,' is a lawful resident of the State of North Carolina and has applied for political asylum on the grounds of political persecution.

6. Defendant Bitfeifan Technology Co., LLC (hereinafter referred to as 'Bitfeifan') is a business entity registered and headquartered in the State of Texas. Bitfeifan operates a cryptocurrency mining and data center. Its human resources and executive management teams are located in mainland China. Bitfeifan receives financial support from the People's Republic of China and engages in cross-border decision-making activities.

7. Defendant Vikesh N. Patel (hereinafter referred to as 'Patel') is an attorney licensed to practice law in the State of Texas. Patel previously represented Bitfeifan in related litigation and actively engaged in litigation misconduct. He coordinated with other Defendants to submit false declarations and intentionally mislead the court.

8. "Defendant Kearney, McWilliams & Davis, PLLC (hereinafter referred to as 'KMD PLLC') is a law firm headquartered in the State of Texas. KMD PLLC employed Defendant Patel and is legally responsible for conduct undertaken by Patel within the scope of his professional representation.

9. Doe Defendants 1–10 are individuals and entities whose identities are not yet known but who participated in the wrongful acts described herein.

## FACTUAL ALLEGATIONS

Plaintiff has suffered sustained and systematic persecution by Defendants, rooted in both his political asylum status and his sincerely held political beliefs. These actions were not isolated incidents, but rather part of an ongoing campaign of discrimination, suppression, and procedural coercion aimed at silencing, intimidating, and punishing Plaintiff for exercising rights protected under U.S. law. Importantly, all Defendants concealed their unlawful conduct behind the façade of seemingly legitimate legal procedures. Accordingly, Plaintiff will now set forth in detail the specific acts that constitute this campaign.

1. **Exploitation of Employer's Superior Position:**
   Defendants, in the position of offering employment opportunities, improperly investigated and probed into Plaintiff's immigration status, political beliefs, and

even sensitive immigration documents relating to his political asylum application. Such inquiries targeted Plaintiff's most vulnerable circumstances, exploiting his dependency on employment.

2. **Systematic Discrimination and Exploitation under the At-Will Doctrine:** Defendants relied on the U.S. at-will employment principle as a façade to disguise systematic exploitation, discriminatory treatment, and arbitrary termination. They fabricated false pretexts of "poor performance" while in fact engaging in a broader pattern of discrimination and economic exploitation against Chinese asylum seekers and other vulnerable workers.

3. **Retaliation and Procedural Abuse Following Litigation:** When Plaintiff resisted through lawful means and prevailed in litigation, Defendants escalated their retaliation. They threatened to damage Plaintiff's future employment prospects to coerce abandonment of the judgment, and engaged counsel to misuse discovery, delay tactics, and other procedural mechanisms in order to gain advantage over a pro se litigant. These acts included, but were not limited to, abusive demands for sensitive information, repeated bad-faith continuance requests, fraud upon the court during trial, and post-judgment perjury in sworn filings aimed at artificially extending appellate deadlines.

All of these acts, though cloaked in the appearance of legal formality, in substance constituted a coordinated campaign of unlawful discrimination, coercion, and suppression. Plaintiff will now set forth in detail each of these acts.

## Employment Discrimination and Retaliation (Sections 1–4)

## Procedural Abuse and Fraud Upon the Court (Sections 5–10)

## 1.Discriminatory Hiring Practices Involving Political Asylum Documents

    A. Defendant Bitfeifan Technology Co., LLC operates in Texas in the field of digital asset mining, while its funding and strategic direction are controlled by entities in the People's Republic of China.

    B. In September 2023, Plaintiff applied for a position at Bitfeifan, which, under the guise of candidate evaluation, inquired into his opposition to the Chinese Communist Party, his reasons for seeking asylum, and

required submission of his I-797C receipt for the I-589 asylum application.

C.  As set forth in **A** and **B**, Bitfeifan's management is based in mainland China, yet during U.S. recruitment it probed applicants' political views on the Chinese Communist Party and demanded submission of immigration documents relating to political asylum applications. Taken together, these facts support the inference that such requests were not genuinely related to employment needs, but rather reflected a politically motivated investigation, potentially carried out at the direction of, or under direct instruction from, the Chinese Communist Party or affiliated entities in mainland China.

D.  As shown in A, B, and C, Bitfeifan's recruitment practices already implicate violations of U.S. law. By demanding political asylum application documents (I-589/I-797C, including Plaintiff's A-Number) and questioning candidates about their opposition to the Chinese Communist Party, Defendants imposed unlawful and discriminatory conditions in the hiring process. Such conduct constitutes immigration-related employment discrimination and document abuse under the Immigration Reform and Control Act (IRCA, 8 U.S.C. §1324b)

## 2.  Abrupt Termination Without Notice

A.  Plaintiff provided all immigration and employment documents requested by Bitfeifan via email, executed the offer letter and employment contract, and commenced employment with Bitfeifan in September 2023 as an Operations Specialist.

B.  Without prior notice or any relevant communication, Plaintiff was informed at the end of his fourth day of employment that his employment contract was terminated. Bitfeifan stated that, because the agreement was an at-will employment contract, they could terminate the employment for any reason.

## 3.  Extortionate Threats Following Justice of the Peace Judgment

A.  Following his termination in October 2023, the plaintiff sued Bitfeifan for wrongful termination in the Harris County Justice of the Peace, Precinct 5, Place 2 Case Number: 235200363794.

B.  The case went to trial in March 2023, Judge ruled for plaintiff for 12000$,Appeal bond set at 24000$.

C.  Subsequently, in April 2023, Bitfeifan placed a call to the plaintiff under the guise of negotiating a settlement. Bitfeifan used the prospect of appeal as leverage, asserting that if they chose to appeal, the case would be retried in County Court, thereby leaving Plaintiff with a litigation record that would harm his future employment opportunities. Bitfeifan further threatened that, should Plaintiff lose in a retrial, he would be liable for the company's attorney's fees. Relying on these threats, Defendants attempted to coerce Plaintiff into abandoning a

4

lawful $12,000 judgment in exchange for a settlement of merely $3,000.

D. Furthermore, Bitfeifan repeatedly insisted that the plaintiff's act of suing his employer was indicative of an extreme personality. During the call, they also attempted to extract the plaintiff's private information, including his family situation, current residence, and his relationship with his roommate.

E. Bitfeifan's conduct, as set forth in A-D, inflicted severe emotional distress and psychological harm upon Plaintiff. The abrupt and arbitrary termination without cause, followed by threats of reputational damage, economic coercion, and invasive questioning into Plaintiff's private life, created a climate of fear, humiliation, and intimidation. Plaintiff was forced to endure the anxiety of potentially losing lawful compensation, the stigma of a fabricated "litigation record," and the invasion of his personal privacy. These actions not only aggravated Plaintiff's sense of vulnerability as a political asylum applicant but also impaired his ability to pursue future employment free from intimidation.

F. Bitfeifan's conduct, as described in A-D, is properly characterized not merely as post-employment retaliation but as a form of civil extortion closely aligned with the definition of racketeering activity under the **Racketeer Influenced and Corrupt Organizations Act (RICO)**, 18 U.S.C. §§ 1961(1), 1964. Specifically, Bitfeifan attempted to obtain an unlawful financial advantage—coercing Plaintiff to relinquish a valid $12,000 judgment in exchange for only $3,000—through threats of reputational harm, fabricated litigation risks, and exposure to attorney's fees. Such tactics amount to extortionary pressure: the use of wrongful threats to obtain property or economic concessions not otherwise owed.

G. Under federal law, extortion is expressly defined as a predicate act under **RICO**, and courts have recognized similar patterns of coercive settlement demands as falling within the scope of racketeering activity when carried out as part of a broader campaign of abuse. In parallel, under Texas common law, these threats independently constitute civil extortion, duress, and intentional infliction of emotional distress, providing Plaintiff with overlapping bases for liability.

## 4. Retaliatory Appeal Following Failed Coercion

A. In April 2024, Bitfeifan retained Defendant Vikesh N. Patel ("Patel") and his law firm, Defendant Kearney, McWilliams & Davis, PLLC ("KMD PLLC"), to appeal the $12,000 judgment entered by the Justice of the Peace Court to the Harris County Civil Court at Law No. 3 Case No. 1228045.

## 5. Abuse of Discovery Process: Demands for Irrelevant Personal Financial Information, Litigation Records, and Tax Returns

A. On December 12, 2024, Defendants Vikesh N. Patel and Kearney, McWilliams & Davis, PLLC filed a Motion to Compel Discovery demanding that plaintiff produce private financial records, including bank statements and tax returns, as well as litigation history, employment records, and other documents that bore no relevance to the core issues of the case. In addition, the motion largely duplicated discovery requests that plaintiff had already answered on October 25, 2024. Plaintiff objected to these demands and maintains that the filing of such a motion was not intended to obtain relevant or proportional evidence, but rather to harass, intimidate, and impose unnecessary burden. Plaintiff therefore alleges that defendants' conduct constitutes harassment and an abuse of the discovery process.

B. These abusive practices were cloaked in the appearance of procedural fairness, but their true nature was far more troubling when directed against a self-represented plaintiff with no legal training, who is also a non-native English speaker and an applicant for political asylum. This raises a fundamental concern: whether individuals of limited means, unable to retain counsel, should be subjected to procedural harassment and oppressive discovery tactics designed not to advance the merits of the case, but to exploit their vulnerability and deter them from seeking justice.

## 6. Abuse of Discovery Process and Intimidation Through Motion to Compel

A. Although the plaintiff had already, at the outset of the case, voluntarily produced all evidence in his possession on May 29, 2024, and later supplemented his responses on October 25, 2024 in compliance with defendants' first discovery request, defendants nevertheless filed a Motion to Compel in December 2024. That motion repeated numerous requests for information already provided, and demanded production of documents and evidence that defendants themselves already possessed. Defendants then used this motion as a basis to seek a continuance, and the court granted their request, postponing the trial until June 2025. These procedural tactics imposed additional pressure on the plaintiff and resulted in ongoing economic harm.

B. On April 22, 2025, the Court addressed defendants' Motion to Compel. The Court rejected defendants' initial requests to recover attorneys' fees for preparing the motion and struck the intrusive demands for plaintiff's bank statements, tax returns, and prior litigation records. The Court directed defendants to revise and narrow their motion accordingly. After those modifications were made, the Court granted the motion in part, compelling only limited discovery deemed relevant to the issues in dispute.

C. Based on the factual scenario described in Sections A-B, despite plaintiff's fullest cooperation with defendants' discovery requests, defendants and their counsel nevertheless filed an unreasonable, irrelevant, and duplicative Motion to Compel, and further demanded that plaintiff be ordered to pay $1,450 in attorneys' fees for drafting that motion. Imposing such a demand upon a self-represented litigant—recently terminated from employment, without financial resources, a non-native English speaker, and lacking legal training—constitutes improper pressure and intimidation. Plaintiff contends that this conduct is not only unethical, but also amounts to an abuse of the judicial process that undermines access to justice for ordinary individuals. While such a fee demand may appear trivial to members of the legal profession, it represents a severe and unjust burden upon an indigent, self-represented litigant, chilling his ability to vindicate his rights and imposing undue pressure to abandon his claims.

D. Following the Court's April 22, 2025 Order to Compel, and up until the June 23, 2025 trial date, defendants Patel and KMD PLLC never contacted plaintiff regarding the order, nor did they provide any notice of its existence. Plaintiff received no electronic service and no written correspondence concerning the Court's directive. Although defendants had nearly two months to serve the order and request compliance, they took no such action. This demonstrates that defendants' true purpose was not to obtain discovery, but rather to wield the motion and order as a tool of pressure and intimidation.

E. As a self-represented pro se litigant, proper service of court orders is a critical procedural safeguard. In this instance, defendants neither effected electronic service nor provided notice by mail of the April 22, 2025 Order to Compel. Accordingly, plaintiff maintains that he was under no obligation to respond to discovery requests that were not properly served—particularly where those requests were largely duplicative of materials already produced.

## 7. Knowingly False Objection to Suppress Evidence

A. On June 23, 2025, during the bench trial for Case No. 1228045 in the Harris County Civil Court at Law, an incident arose during the presentation of plaintiff's evidence. Defendants' counsel, Vikesh N. Patel, objected and sought to exclude plaintiff's exhibits on the ground that he had never received them and was unfairly surprised.

B. Plaintiff responded that the challenged exhibits consisted of two email communications between the Plaintiff and Bitfeifan , Patel: one had already been introduced in the Justice of the Peace proceedings, and the other had been sent directly to Mr. Patel, to which he had personally replied. When confronted with this proof of receipt, Mr. Patel withdrew his objection in open court.

C.  Plaintiff alleges that Mr. Patel's statement to the Court was not a legitimate litigation tactic, but a knowingly false representation made with the intent to mislead the Court and exclude outcome-determinative evidence. Plaintiff further contends that this conduct constitutes a deliberate attempt to defraud the tribunal, and serves as additional proof of defendants' ongoing conspiracy to abuse the legal process.

8.  **Collapse of Defendants' Performance-Based Defense**

A.  During trial, defendants' official defense was that plaintiff had been terminated for failing to meet performance standards. Yet, under cross-examination, both Bitfeifan's Vice President and its Operations Manager admitted that:

1.  They possessed no evidence of plaintiff's alleged poor performance.
2.  They had never communicated any performance concerns to plaintiff.
3.  No Performance Improvement Plan (PIP) had ever been issued; and.
4.  plaintiff had been given no opportunity or time to improve.

B.  Plaintiff contends that this testimony fatally contradicts defendants' stated defense, demonstrating that their appeal from the Justice of the Peace court was baseless, pursued not to litigate any genuine factual dispute, but solely to delay entry of final judgment and to inflict further harm on plaintiff, consistent with their prior threats.

9.  **Final Judgment with Punitive Damages for Defendants' Malicious Conduct**

A.  On June 23, 2025, the Judge Lashawn Williams issued Final Judgment of Non-Jury Trial, awarding plaintiff $40,000 in compensatory damages and $5,000 in punitive damages. This judgment confirmed both the existence of plaintiff's losses and the defendants' willful misconduct warranting punitive sanctions.

B.  Based on the foregoing facts, plaintiff expresses profound concern regarding defendants' and their counsel's collusive abuse of legal procedure. Such conduct poses a serious threat to access to justice, as it demonstrates that even a pro se litigant—who prevails on the merits and complies with procedural requirements—may nonetheless be subjected to harassment, intimidation, and suppression by attorneys cloaking abusive tactics under the guise of procedural fairness. Defendants' willingness to resort to false statements and fraud upon the court in an effort to influence the outcome of trial underscores the unlawful and unethical nature of their conduct. Plaintiff contends that such practices are incompatible with the fundamental values of access to justice and the integrity of the American judicial system.

## 10. Perjury and Fraud on the Court to Manipulate Appellate Deadlines

A. On August 1, 2025, defendant's counsel, Vikesh N. Patel, filed a Motion to Determine TRCP Rule 306(a)(5) and TRAP 26.1 Deadlines, attaching an affidavit in which he swore under oath that he did not learn of the Final Judgment until July 30, 2025. Relying on this sworn statement, Patel requested that the appellate deadlines be extended under TRCP Rule 306(a). He simultaneously filed a Notice of Appeal.

B. Plaintiff asserts that Patel's sworn claim is irreconcilably inconsistent with the record. Patel was present in court on June 23, 2025, when the Final Judgment was rendered and announced, and on July 1, 2025, he filed a Motion to Strike that explicitly referenced both the judgment and the facts of trial. These undisputed events directly contradict Patel's affidavit.

C. Plaintiff contends that this affidavit, executed before a notary and submitted to the Court to secure procedural advantage, constitutes perjury and fraud upon the court, as it was knowingly false and intended to manipulate appellate deadlines for defendants' benefit.

D. Plaintiff contends that if such a blatant falsehood were to be tolerated within the American judicial system, and if procedural benefits were granted to the party engaging in perjury and fraud, the principle of access to justice would be rendered meaningless—especially for indigent, self-represented litigants who are non-native English speakers and lack formal legal training. This concern is heightened by the fact that plaintiff was the prevailing party at trial; to allow the losing party to obtain procedural advantages through false statements would directly undermine the integrity and finality of a valid judgment. Such tolerance would, in effect, permit any losing party to evade the strict deadlines governing appeals simply by falsely claiming ignorance of the judgment, thereby eroding the seriousness and enforceability of jurisdictional time limits.

## 11. Allegations of Transnational Repression and Coordinated Enterprise Activity

A. Defendants' acts constitute retaliation against a lawful political asylee, and they used the U.S. court system as a tool of suppression in a manner consistent with cross-border repression directed from China.

B. Plaintiff believes the Defendants acted as part of an enterprise whose goal was to identify and suppress politically disfavored individuals, especially those critical of the Chinese regime, through coordinated litigation and workplace exclusion.

C. The coordinated submission of false declarations, concealment of legal documents, strategic delays, and abuse of court processes constitute a pattern of racketeering activity under 18 U.S.C. § 1961(1).

D.  This pattern is both international and systemic, evidencing a scheme to chill the civil rights of Plaintiff and other similarly situated individuals.

E.  On information and belief, the actions of Defendants were not merely private employment decisions or litigation tactics, but part of a coordinated effort by Chinese-funded entities to identify, intimidate, and silence political asylum seekers and dissidents within the United States. These actions are consistent with patterns of transnational repression identified by the U.S. Department of Justice and constitute a threat to civil liberties and democratic institutions on U.S. soil.

## RICO Allegations Under 18 U.S.C. §§ 1961–1964

### I. Enterprise Allegation Under 18 U.S.C. § 1961(4)

- Plaintiff alleges that Defendants Bitfeifan Technology Co., LLC ("Bitfeifan"), its executive management team based in mainland China, and the law firm Kearney, McWilliams & Davis, PLLC ("KMD PLLC"), including its attorney Vikesh N. Patel, collectively constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4). This enterprise is not merely a collection of independent actors, but a structured and ongoing association-in-fact, united by a common purpose: to suppress, intimidate, and economically harm politically vulnerable individuals—particularly political asylum seekers—through coordinated abuse of employment and judicial processes.
- Bitfeifan's executive team in China directed discriminatory hiring practices and politically motivated terminations. KMD PLLC and Patel, acting as legal counsel, executed retaliatory litigation strategies, including perjury, procedural harassment, and fraudulent filings. These entities operated in concert, with shared objectives and mutual reinforcement, forming a transnational enterprise that weaponized U.S. legal institutions to achieve unlawful ends.

### II. Pattern of Racketeering Activity Under 18 U.S.C. § 1961(1)

The enterprise engaged in a pattern of racketeering activity, consisting of multiple predicate acts as defined under 18 U.S.C. § 1961(1), including but not limited to:

- Extortion (18 U.S.C. § 1951): Threatening Plaintiff with reputational harm, litigation records, and financial liability to coerce abandonment of a valid $12,000 judgment in exchange for a $3,000 settlement.
- Obstruction of Justice (18 U.S.C. §§ 1503, 1512, 1513): Filing knowingly false declarations to manipulate appellate deadlines; suppressing evidence through perjury; and retaliating against Plaintiff for lawful litigation.
- Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343): Submitting fraudulent filings and declarations via electronic court systems to mislead the judiciary and gain procedural advantage.

- Abuse of Process and Fraud Upon the Court: Repeatedly filing duplicative and irrelevant motions to compel discovery, demanding private financial records without legal basis, and misusing continuances to delay trial and inflict economic harm.

These acts were not isolated or spontaneous. They occurred over a sustained period (2023–2025), across multiple forums (employment, trial court, appellate court), and involved deliberate coordination among Defendants. The continuity and relatedness of these acts satisfy the RICO requirement for a "pattern" of racketeering activity.

## III. Business and Property Damage Under 18 U.S.C. § 1964(c)

As a direct and proximate result of Defendants' racketeering conduct, Plaintiff suffered tangible business and property damage, including:

- Judgment Coercion and Delayed Relief: Defendants attempted to coerce Plaintiff into relinquishing a valid $12,000 court judgment through threats, intimidation, and extortionate tactics. As a result of Defendants' retaliatory conduct—including procedural harassment, reputational attacks, and obstruction—Plaintiff was unable to obtain timely relief. The delay in accessing the awarded funds prolonged Plaintiff's financial hardship and exacerbated emotional distress. This extended period of uncertainty and pressure, directly attributable to Defendants' unlawful actions, constitutes compensable harm under applicable statutes and underscores the pattern of coercion central to Plaintiff's claims.
- Employment Harm:Defendants' threats regarding litigation records and reputational damage impaired Plaintiff's ability to seek future employment, particularly as a political asylum applicant. In addition, the retaliatory conduct described herein forced Plaintiff to devote substantial time and energy to managing litigation, rendering him unable to maintain full-time employment. As a result, Plaintiff suffered ongoing loss of income and professional momentum. The cumulative effect of Defendants' intimidation, procedural harassment, and reputational attacks also eroded Plaintiff's trust in prospective employers and triggered symptoms consistent with post-traumatic stress related to job-seeking, further impairing his ability to pursue gainful employment. These injuries constitute legally cognizable harm to Plaintiff's business and property interests under 18 U.S.C. § 1964(c).
- Economic Injury: Plaintiff incurred unreimbursed costs responding to abusive discovery demands, including time, resources, and emotional distress, while lacking legal representation.Plaintiff has suffered ongoing loss of income due to the substantial time and effort required to manage litigation-related tasks, which

11

prevented Plaintiff from engaging in regular employment. This constitutes a quantifiable economic injury recoverable under applicable law.

- Delay of Compensation: Defendants' frivolous appeal and manipulation of deadlines delayed enforcement of a $45,000 final judgment, depriving Plaintiff of timely access to awarded damages.
- Chilling Effect on Legal Rights: The coordinated campaign of intimidation and procedural abuse undermined Plaintiff's ability to assert his rights, constituting a deprivation of access to justice.

These injuries are compensable under RICO, which authorizes treble damages for harm to business or property caused by racketeering activity. Plaintiff therefore seeks relief under 18 U.S.C. § 1964(c), including compensatory, punitive, and treble damages.

---

## CAUSES OF ACTION

**Count I: Discrimination Based on Immigration and Political Status**
(Violation of 42 U.S.C. § 1981 and 8 U.S.C. § 1324b)

**Count II: Civil Conspiracy to Interfere with Civil Rights**
(42 U.S.C. § 1985(2) and (3))

**Count III: Fraud Upon the Court and Abuse of Process**

**Count IV: Retaliation, Harassment, and Privacy Invasion**

**Count V: Civil RICO**
(18 U.S.C. § 1962(c), (d))

---

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against all Defendants;
B. Award compensatory damages in an amount to be determined at trial;
C. Award treble damages under RICO;
D. Award punitive damages for malicious and oppressive conduct;
E. Award total monetary relief, including punitive damages, in the amount of $10,000,000;
F. Issue injunctive relief:

1. Prohibiting Defendants and their agents from engaging in any threats, harassment, or intimidation against Plaintiff or any other individuals based on their political asylum status or political beliefs;
2. Prohibiting Defendants from using the job application process or interview channels to solicit immigration documents, asylum records, or to inquire about applicants' political opinions, including their views on the Chinese Communist Party;
3. Prohibiting Defendants from abusing judicial process or initiating legal proceedings for the purpose of suppressing, intimidating, retaliating against, or financially burdening Plaintiff;

G. Refer the matter to the U.S. Attorney and relevant authorities for potential investigation;

H. Award reasonable attorney's fees and costs if applicable; and

I. Grant such other relief as the Court deems just and proper.

---

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
**/S/ HAOYING ZHANG**
Pro Se Plaintiff

800 Finsbury St Apt 2110 Durham, NC 27703

qzx0015@gmail.com 862-867-8760

13

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Haoying Zhang

**DEFENDANTS**

BITFEIFAN TECHNOLOGY COMPANY INC ;
Vikesh N. Patel, Kearney ; McWilliams & Davis, PLLC

**(b)** County of Residence of First Listed Plaintiff    Durham
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Harris
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Haoying Zhang, Pro se, (862)-867-8760
800 Finsbury St,APT 2110,Durham,NC,27703

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[X] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. §§ 1961–1968; 42 U.S.C. §§ 1981, 1985(2), 1985(3); 42 U.S.C. § 1986; 18 U.S.C. §§ 1503, 1512, 1513; 28 U.S.C. § 1927;

Brief description of cause:
Civil RICO, discrimination based on political standing, § 1985 civil rights conspiracy, obstruction of justice, attorney misconduct, and abuse of judicia

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 10 million dollars

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
08/12/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Haoying Zhang

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.